UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTER DIVISION

JEFFREY PARKER, DONALD B. LOSEY,
and SHELLEY WEATHERFORD,
individually and on behalf of themselves,
the GKN Group Retirement Savings Plan,
and all others similarly situated,

                                                                                                           Case No. 21-12468

      PLAINTIFFS,

v.

GKN NORTH AMERICA SERVICES, INC.,      Sean F. Cox
BOARD OF DIRECTORS OF GKN NORTH      United States District Court Judge
AMERICA SERVICES, INC., and the BENEFIT

      DEFENDANTS.
_____/

**OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO DISMISS AND DENYING THE CHAMBER
OF COMMERCE'S MOTION FOR LEAVE TO PARTICIPATE AS AN *AMICUS
CURIAE***

**INTRODUCTION**

This case is a proposed class action on behalf of persons who were participants or beneficiaries of Defendants' employer-sponsored retirement plan ("the Plan"). Plaintiffs make several claims that Defendants breached their fiduciary duties of prudence and loyalty under the Employment Retirement Income Security Act ("ERISA"). The matter is currently before the Court on the Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, brought under Fed. R. Civ. P. 12(b)(6).

In a separate motion, the U.S. Chamber of Commerce requests leave to participate as an *Amicus Curiae*.

1

For the reasons set forth below, the court **DENIES** Defendants' motion to dismiss and **DENIES** the Chamber of Commerce's motion for leave to participate as an *Amicus Curiae*.

## BACKGROUND

On or about October 19, 2021, Plaintiffs Jeffrey Parker, Donald B. Losey, and Shelley Weatherford filed their First Amended Complaint ("FAC") seeking to represent a class of persons who were participants or beneficiaries of retirement plans offered by Defendants (GKN North America Services, Inc., Board of Directors of GKN North America Services, Inc., the Benefit Committee[1]) to employees. (ECF No.28. PageID.429). The "Plan" in this case is "GoalMaker", an asset allocation service selected by Defendants and provided by Prudential Insurance Company ("Prudential"). (ECF No.28, PageID.432). Prudential markets the Plan as a service to help keep retirement goals on track and periodically rebalance participants' accounts to match their portfolio. (ECF No.28-1, PageID.496). Plaintiffs allege that they participated in the Plan during their employment with defendants and suffered financial harm due to defendants' actions regarding the Plan.

In their FAC, Plaintiffs claim the plan cost "participants millions of dollars" and "undermin[ed] the purpose of 401(k) plans—*i.e.*, to maximize participants' retirement savings" as required under the Employment Retirement Income Security Act ("ERISA"). (ECF No.28, PageID.433); *See* 29 U.S.C. § 1001. Plaintiffs claim Defendants' actions constitute violations of the fiduciary duties of prudence and loyalty.

On May 5, 2022, Defendants filed a motion to dismiss Plaintiffs' FAC. (ECF No.31). On June 9, 2022, Plaintiffs filed their opposition to the motion to dismiss. (ECF No.38). On June

---

[1] Parties stipulated and agreed that the defendants John Does 1-30 were dismissed on February 8, 2022 (ECF No. 24, PageID.138).

2

30, 2022, Defendants filed their reply to Plaintiffs' opposition to the motion to dismiss. (ECF No.41). In their reply, Defendants addressed *Smith v. CommonSpirit*, 37 F.4th 1160 (6th Cir. 2022), which is highly relevant to the proceedings but was decided *after* Plaintiffs filed their opposition to the motion on June 9, 2022. (*Id.* at PageID.883). Plaintiffs subsequently filed an unopposed motion for leave to file a sur reply on July 8, 2022, to address that case. (ECF No.42). The court granted their motion for leave on August 11, 2022. (ECF No.46).

Separately, on or about May 12, The U.S. Chamber of Commerce ("the Chamber") filed a motion for leave to participate as an *amicus curiae*. (ECF No. 33). On May 16, 2022, Plaintiffs filed their opposition to the Chamber's motion to participate as *amicus curiae*. (ECF No.35). On May 23, 2022, the Chamber filed a reply in support of the motion to participate as *amicus*. (ECF No.37).

A motion hearing for both the motion to dismiss and for leave to participate as an *amicus curiae* is set for August 18, 2022.

**Applicable Legal Standard**

A motion to dismiss tests the legal sufficiency of the plaintiff's complaint. To survive, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Although the court must accept all well-pleaded factual allegations as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a

factual allegation." *Twombly*, 550 U.S. at 555. Thus, to avoid dismissal, "a complaint must contain sufficient factual matter," accepted as true, to state a claim for relief that is plausible on its face. *Id.* at 678.

## ANALYSIS

Defendants seek to dismiss all Plaintiffs' claims, to include claims of breaches of the fiduciary duties of imprudence, loyalty, and to monitor.

### A. Motion for Leave to Participate as Amicus Curiae

"There is no statute or rule of civil procedure" regarding the granting or denial of proposed amicus briefs. *Freed v. Thomas*, No. 17-CV-13519, 2018 WL 3848155, at *3 (E.D. Mich. Aug. 9, 2018). It is thus at the discretion of the court to determine if the proposed amicus has demonstrated its entitlement to file a brief. *Id.* In its motion, the proposed amicus claims its brief will "contribute in clear and distinct ways" to the Court's analysis of this case including explaining the broader regulatory or commercial context, supplying empirical data, and providing practical perspectives on the consequences of varying outcomes. (ECF No.33, PageID.685–86). This Court disagrees. The motion and its accompanying proposed brief simply rehash arguments already made by the parties and summarizes case outcomes from other jurisdictions irrelevant to this case. The Court therefore **DENIES the Chamber of Commerce's Motion for Leave to Participate as *amicus curiae*.**

### B. ERISA Claims

Congress enacted ERISA in 1974 to protect participants in employee benefit plans by establishing standards of conduct for plan fiduciaries. 29 U.S.C. § 1001(b). A fiduciary must fulfill his or her duty "with the care, skill, prudence, and diligence" that a professional "acting in a like capacity and familiar with such matters" would use. *Id.*, § 1004(a)(1)(B).

4

To make a claim for a breach of fiduciary duty under ERISA, the plaintiff must show that "(1) the defendant was a fiduciary of an [ERISA] plan who, (2) acting within his capacity as a fiduciary, (3) engaged in conduct constituting a breach of his fiduciary duty." *Dover v. Yanfeng US Automotive Int. Sys. I LLC*, 563 F. Supp. 3d 678, 684 (E.D. Mich. 2021) (citing 29 U.S.C. § 1109). The third element, engaging "in conduct constituting a breach of [] fiduciary duty," is the major element of contention in the recent rash of ERISA cases. *Id.*; *See Smith v. CommonSpirit*, 37 F.4th 1160 (6th Cir. 2022); *Forman v. TriHealth, Inc.*, 40 F.4th 443 (6th Cir. 2022). What constitutes a sufficient claim of a breach of fiduciary duty is still being decided throughout the circuits.

The fiduciary duty under ERISA includes the duty of prudence and the duty of loyalty, as well as the derivative duty to monitor. *Id.* A breach of either duty results in a finding of a breach of fiduciary duty. *Id.*

### C. Duty of Prudence

ERISA's duty of prudence is derived from the law of trusts and requires "plan administrators to select initial investment options with care, to monitor plan investments, and to remove imprudent ones." *Forman v. TriHealth, Inc.*, 40 F.4th 443, 448 (6th Cir. 2022) (citing *Tibble v. Edison Int'l*, 575 U.S. 523, 528–29 (2015)). When assessing a fiduciary's prudence, the focus is on the decision-making process, not how the fund performed in hindsight. *Id.* (citing *Pfeil v. State St. Bank & Tr. Co.*, 806 F.3d 377, 384–85 (6th Cir. 2015)); *CommonSpirit*, 27 F.4th at 1167.

In this case, this Court finds that Plaintiffs have made a claim of the violation of the fiduciary duty of prudence sufficient to survive a motion to dismiss. Plaintiffs' claim survives on the grounds that Defendants failed to investigate and select lower-cost alternatives and by

5

retaining imprudent plan investments, but not on the grounds that Defendants charged excessive recordkeeping fees.

### a. Violation of the Duty of Prudence via Failure to Investigate and Select Lower-cost Alternatives and by Retaining Imprudent Plan Investments

Courts have begun to define a middle ground for when a claim for a breach of prudence is sufficient in relation to investigating and selecting funds. While a claim is sufficient when a plaintiff can show that the fund selection process itself favored higher-fee funds, it is *insufficient* when plaintiff claims only that other, lower-cost funds were (or are) available in the market. *Dover,* 563 F. Supp. 3d at 687 (E.D. Mich. 2021); *Forman v. TriHealth, Inc.*, 21-3977, 2022 WL 2708993, at *4 (6th Cir. July 13, 2022). Nor is it enough to simply offer a wide variety of kinds of funds as a means of defeating an imprudence claim. *Hughes v. N.W. U.*, 142 S. Ct. 737, 742 (2022). Instead, the plaintiffs must show that an investment was imprudent from the moment it was selected, over time, or clearly unsuitable for the goals of the fund based on ongoing performance. *CommonSpirit* at 1166. In other words, stating a plausible claim of a breach of imprudence is a temporal issue in which the Plaintiff must point to an action that constituted a breach of the duty of prudence.

Here, Defendants ask the court to dismiss Plaintiffs' claim that Defendants breached their fiduciary duty of prudence. Plaintiffs claim Defendants breached their duty by failing to investigate and select lower-cost alternative funds and by retaining imprudent plan investments. Plaintiffs argue Defendants used a "flawed fiduciary process" when its chosen asset allocation service "GoalMaker resulted in a portfolio dominated by Prudential's preferred high-cost, actively managed funds that performed poorly in comparison to cheaper alternatives." (ECF No. 38, PageID.769). Plaintiffs also claim that they have shown that their chosen comparator funds

6

are comparable to the challenged funds because they are in the same Morningstar category—"peer groupings based on similarities among the funds in each category share many core similarities and, thus, are reasonable candidates for comparison to one another." (ECF No.38, PageID.771). Further, "even if Defendants could plausibly challenge whether Plaintiffs selected suitable comparators, this is a fact-intensive inquiry that is not appropriate for resolution on a motion to dismiss." (ECF No.38, Page ID.770. (citing *Davis v. Magna Int'l of Am., Inc.,* 2021 WL 1212579, at *7 (E.D. Mich. Mar. 31, 2021)).

Defendants argue that Plaintiffs incorrectly focused on the results or outcome of the fund rather than the *process* by which the funds were selected. (ECF No. 31, PageID.529). The existence of lower-priced, better-performing alternatives, without more, is not enough to demonstrate imprudence. *Id.*; *CommonSpirit*, at 1166. Defendant further alleges these comparator funds do not "meaningfully compare" for several reasons. (ECF No. 31, PageID.529). First, Plaintiffs did not "plausibly allege similarity of aims, risk, reward, style, management, and structure." *Id.* Second, Plaintiffs use irrelevant "[c]omparator [f]und data from 2022 to compare costs when the [c]hallenged [f]unds were removed from the plan in 2019." ECF No. 31, PageID.530. In other words, Defendants are using data from outside the time period in question to compare funds.

In this case, this Court finds Plaintiffs make a claim of a breach of fiduciary duty under the duty of prudence to be sufficient to survive a motion to dismiss. While determining if a fiduciary was imprudent from the *results of the process alone* is not sufficient to make a claim, it can help to show that the plan did not receive sufficient benefits to justify the inclusion of such costly funds going forward. *Dover* at 687. Here, Plaintiffs' selected comparator funds that were significantly cheaper and consistently outperformed the Plan funds. While the data included

7

information from 2022 which is outside the time period in question, it also covered and focused on data from the years at issue. (ECF No.28 at PageID.457). This information constitutes accurate comparator data. (ECF No.28 at PageID.457). Plaintiffs also did more than make a bare accusation of better, cheaper funds simply *existing* in the market. Plaintiffs selected comparator funds all within the same MorningStar categories as the funds in the Plan. (ECF No.38, PageID.759). MorningStar categories are divided into "four broad asset classes" and sixty-four categories "to show performance relative to a benchmark." MORNINGSTAR, *MorningStar Category Funds*, https://tinyurl.com/mr4xzhru (last visited Aug. 15, 2022). Counter to Defendants' claim, these categories function as comparators in areas that include the potential risks and rewards of the fund. *Id.* In fact, parties in similar ERISA actions regularly reference the MorningStar indexes to serve as a comparator and to allege a breach of duty. *See Dover* at 688. This court finds that Plaintiffs' make a successful claim of a breach of the fiduciary duty of prudence by failing to investigate and select lower-cost alternatives and by retaining imprudent plan investments sufficient to survive at the motion to dismiss stage.

### b. Violation of the Duty of Prudence via Excessive Recordkeeping Fees

Next, Defendants ask the court to dismiss Plaintiffs' claim that Defendants breached its fiduciary duty of prudence by charging excessive record keeping fees. Here, Defendants claim Plaintiffs failed to allege that the fees were excessive "relative to the services rendered." (ECF No. 31, Page ID.537). In a recent Sixth Circuit opinion regarding *overall plan fees*, the court found an allegation of excessive fees in violation of the duty of prudence to be insufficient when plaintiffs simply pled that the fees were twice as high as their comparators. *Forman* at 449. In that case, the plaintiffs failed to allege that: (1) "these fees were high in relation to the services the plan provided" and (2) "the fees could not be justified by the plan's strategic goals relative to

8

their selected comparators." *Id.* A plan fiduciary might prudently choose a fund with a higher expense ratio due to the skill of that management team, or due to its environmental, social, and governance objectives. *Id.* There are a myriad of reasons and considerations that go into a fiduciaries' selection of a particular fund or plan. In other words, bare allegations cannot proceed devoid of further context.

Similarly, the Sixth Circuit found an allegation of excessive *recordkeeping* fees to be insufficient when plaintiff claimed that recordkeeping fees were too high when compared to the industry average. *CommonSpirit* at 1169. There, the court found plaintiff failed to allege that the "industry average" fee they cited was otherwise equivalent to the recordkeeping fee at issue and the services it covered. *Id.* In other words, courts require a "context-specific", or an apples-to-apples comparison of what the fees cover to find a breach of the duty of prudence. *Id.*; *Hughes*, 142 S. Ct. at 742.

In this case, Plaintiffs argue that "[D]efendants breached their duties by failing to regularly solicit bids, and monitor and negotiate fees, thus causing Plan participants to pay excessive recordkeeping fees." (ECF No.38, PageID.775). Defendants state Plaintiffs failed to provide "the necessary detail regarding [fund] services and the fees charged for *those* services to enable the court to assess the reasonableness of the fees." *Id.* at 538. Just as the court found in *CommonSpirit*, to make a claim of excessive recordkeeping fees, must make a context specific comparison. *CommonSpirit* at 1169; *Hughes*, 142 S. Ct. at 742. A comparison of "Fee A" to "Fee B" exclusively considering price is insufficient. A party must state what the fees cover and how they are similar to make a successful context-specific comparison. *Id.* at 1169. As such, without further context as to what the fees cover, Plaintiffs' claim of excessive recordkeeping fees is insufficient for a claim of a fiduciary's breach of the duty of prudence.

D. Duty of Loyalty

ERISA's duty of loyalty requires that a fiduciary discharge his or her "duties with respect to a plan solely in the interest of the participants and beneficiaries…for the exclusive purpose of…providing benefits to participants and beneficiaries[] and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). This includes "avoiding improper transactions with 'parties in interest' or self-dealing." *Dover*, 563 F. Supp. 3d at 689 (internal citations omitted) (citing 29 U.S.C. §§1106, 1002(14)). To make a claim of the breach of the duty of loyalty, plaintiffs "must sufficiently allege that [d]efendants acted for the purpose of benefitting those third parties or themselves." *Id.* (citing *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1062 (M.D. Tenn. 2018)).

In this case, Plaintiffs claim the Plan Defendants chose served the asset allocation service, Prudential's, "interests by funneling participants' retirement savings into Prudential's own overpriced proprietary investment products and into investments that paid kickbacks to Prudential." (ECF No.38, PageID.777). Plaintiffs further claim that this supports "an inference that Defendants acted in a way that favored Prudential over the Plans' participants." *Id.*

Defendants argue Plaintiffs' claim is insufficient because a breach of loyalty claim "requires factual allegations that support a plausible inference that the fiduciaries acted *for the purpose of providing benefits to a third party*, and that their motivation was to put their *own interests* ahead of plan participants." (ECF No.31, PageID.542) (citing *Disselkamp v, Norton Healthcare, Inc.*, WL 3536038, at *10 (W.D. Ky. Aug. 2, 2019) (emphasis added)). In other words, they argue Plaintiffs did not sufficiently allege that Defendants acted *for the purpose of benefitting* those third parties or themselves. *Dover*, 563 F. Supp. 3d at 689.

Here, Plaintiffs fail to make any allegations to suggest that the fiduciaries' operative motive was self-dealing or to benefit *their own interests* (as opposed to the beneficiaries). Rather, they allege that Defendants' choice asset allocation service, Prudential, was acting in its own interest. But the actions of the asset allocation service are not at issue here. The question is whether Defendants, as fiduciaries, acted for the purpose of benefitting the third party or themselves. Without the required allegations of *fiduciary* self-dealing, it is not reasonable for the Court to find a breach of fiduciary duty under the duty of loyalty theory.

E. Failure to Monitor

ERISA fiduciaries have a "continuing duty to monitor investments and remove imprudent ones." *Tibble*, 575 U.S. 523. However, unlike the fiduciary duties of prudence and loyalty, most courts treat a duty to monitor claim as deriving from a successful claim of a breach of fiduciary duty. *See Dover*, 563 F. Supp. 3d at 690. If a breach of fiduciary duty claim survives so too does the claim for failure to monitor. *Id.* at 690–91. This Court has found that Plaintiffs' allegations for breach of the fiduciary duty of prudence to be sufficient, meaning the claim for failure to monitor may stand.

## CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Defendants' motion to dismiss is **DENIED** and the Chamber's motion for leave to participate as an *amicus curiae* is **DENIED**.

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: August 26, 2022

11